*AGAISSE & AL.* vs. *GUEDRON & AL.*

APPEAL from the court of the parish and city of New Orleans.

East'n District.
*Jan.* 1824.

AGAISSE & AL.
*vs.*
GUEDRON & AL

PORTER, J. delivered the opinion of the court. The petitioners state, that one of them, Marie Antoinette A. Daquin, wife of Jean Agaisse, is the legitimate daughter of Francois Daquin, and Francoise Barbe, both deceased : that on the death of her mother who died first, she inherited all her property, among which were several slaves, who remained in the possession of her father and tutor Francois Daquin ; that at her decease they came into the hands of her uncle Thomas Daquin, who was appointed her tutor, and by whom they were sold to pay a debt alledged to be due by one of the petitioners Marie Antoinette, as heir of her mother, to one Marie Therse Fournier, widow Rouset.

That at the sale of the property widow Rousset, the supposed creditor, became the purchaser of six negroes for a sum much inferior to the amount of her pretended claim, that she afterwards sold three of them for $1000, and remained in possession of the other three until her death, when they were dis-

The circumstance of a minors estate being already in the hands of a tutor could not prevent the legislature from directing by a subsequent law, that the property should be administered as it thought proper to prescribe.

There is no rule of law or authority which requires that in an inventory of a minors property, a distinction or description should be made of what was inherited from the father or the mother, nor will this court annul a sale, because such distinction was omitted.

If the sale of minors property is sought to be rescinded on account of *lesis* * by the remedy of *restitutio in in-*

East'n District.
*Jan.* 1824.

AGAISSE & AL.
*vs.*
GUEDRON & AL

*tegrum*, the circumstance that the said property was some time after the judicial sale thereof sold by the vendee at the dome, for a much greater price, is not such a one as should authorize the rescission of the sale particularly when the price given at the said judicial sale equals the amount at which it was appraised.

Although a demand, which is not liquidated, cannot be pleaded in compensation of a debt sued on, it may, in certain cases, be offered by way of *reconvention.*

posed of by her executor for the sum of $4370; that the sale by the tutor of Marie Autoinette Daquin being illegal, unjust, and injurious, the petitioners are entitled to demand restitution of the said slaves in kind, but being unwilling to disturb the purchasers and possessors, they offer to accept and ratify the sale made by Mrs. Rousset and to raise the price for which they were sold.   The defendants are stated to be heirs of Rousset, and in that character to be responsible for one third of the amount already specified; judgment is prayed against them for that sum.

The defendants plead that the mother of Eugenie Rousset, wife of Guedron by a first marriage with Mr. Barbe, had three children, among which were Francois, the mother of the petitioner; that after the death of Barbe his widow was entitled to three fifths, and his children to two fifths of the property left at his death which provided an income of 15990 livres per annum.   That this estate was left in possession of the children by their mother, in consideration of the sum of 6000 livres to be paid her annually.   That Ursule and Francoise Barbe died, and that the mother of the petitioner by virtue of testaments made by her

brother and sister, succeeded to their rights; that the annuity not being paid by her; Francois Daquin her husband, after her decease, made a settlement and acknowledged to one widow Rousset the respondents mother 5100 dollars which he promised to pay in instalments of 100 dollars each every four months; that at the death of Daquin, his estate was sold by a legal order of the Parish Judge of Plaquemine, and at this sale widow Rousset her ancestor became the purchaser of six slaves, the price of which, 2304 dollars, she credited on the sum due her.

They aver that the petitioners owe them the one third of the balance still due widow Rousset after deducting the price of the slaves just mentioned in the same proportion.

The sale now sought to be set aside was made by the second tutor, at a time when according to the provisions of the Civil Code, all tutors were directed to make an inventory within ten days after their appointment, and within the same period after the inventory, to proceed and sell the property of their ward. *C. Code,* 68, *Aarts.* 54 & 56.

This sale is contended to have been illegal, because the provisions of the law only apply to

East'nDistrict.
Jan.1824.

AGAISSE & AL.
vs.
GUEDRON & AL

successions opened after its passage, and it has been urged that it would be giving a retrospective operation to the statute to apply it to property already in a course of administration and on which a tutor had already acted.

If it should be found on a further examination that the articles of the code already referred to, apply to this case, we do not see that the objection raised to their having a retrospective operation can have any weight ; because the legislature had as much right to direct that minors property should be sold on a change of tutors, as on the first appointment of one. The circumstance of the estate being already in the hands of a tutor could not prevent the legislature from directing that subsequent to the passage of the law the property should be administered in such manner as they thought necessary to prescribe.

The real question here is whether the legislature have provided for such a case as that now before us. If we follow the letter of the law, there is no doubt they have ; for it does not distinguish between first and second tutors, or whether the property came into the hands of the second, through those of the first, or from any other source. The directions con-

East'nDistrict.
Jan.1824.

AGAISSE & AL.
vs:
GUEDRON & AL.

tained in the article of the Civil Code already
noticed, are in general, addressed to all tutors,
and require them to make an inventory of the
effects of the minor, and sell them.   The case
therefore is one, for the application of a max-
im on which we have often acted—that where
the law does not distinguish, we should not.
But if we felt at liberty to make a distinction,
where none was expressed, it is very question-
able if it could be done on satisfactory grounds.
The policy of the law at that time was to re-
duce all the property of minors into cash in or-
der, as the Code expresses, to avoid the incon-
venience of administering it in kind, C Code,
72, 72.   This inconvenience was certainly as
great in relation to estates which were to pass
from one tutor to another, as those in which
the first tutor appointed received the property.
We do not believe therefore any exception was
intended.   If the construction were doubtful
there is a consideration not without weight in
this case, namely : that the act we are called
on to annul, was done in exact pursuance of
the literal commands of the laws by a man dis-
charging the duties of an office, the acceptance
of which is compulsory.   That interpretation
therefore should be preferred which protects

East'n District. good faith in the discharge of a trust at once
Jan, 1824.
onerous and difficult. · It is not however neces-
AGAISSE & AL.
vs.          sary to place our decision on this ground, for
GUEDRON & AL  we feel that, that construction cannot be incor-
rect which in following the letter gives effect
to the spirit of the law.

It has been contended that it was not neces-
sary to make an inventory, because the second
tutorship was but a continuation of the first.
To test the correctness of this position, we
have only to examine whether the second tutor
is responsible for all the property inventioned
by his predecessor? and for nothing more?
now it appears clear to us that if the first tutor
wasted the property which had come into his
hands and did not deliver it over, the second
would not be responsible for that which he did
not receive. If on the contrary there were ef-
fects handed over to the second, which the first
had failed to make inventory of—the former
would certainly be answerable for them. The
safety therefore of all parties rendered such a
measure indispensable, and this brings us to
the last point made on this part of the case—
that inventoring and selling property which
the child inherited from the mother without
distinguishing that which descended from the

father vitiates and renders void the whole proceeding.

We have looked a good deal into the books that treat on this matter, and we have not been able to find any positive rule of law which requires this distinction to be made in the inventory, or which authorizes us to declare the sale null if it be omitted. The law require all the property to be inventoried—and that was done here. In the absence of any express rule on the subject we have neither the power nor wish to introduce one. Minors are already sufficiently guarded by the direct commands of the law, without the court being under the necessity of protecting them by a construction which would multiply the dangers and difficulties of purchasing their property. Whether the objects sold had been inventoried, as that of the father, or the mother, the result must have been the same.

But it is still urged the sale must be rescinded even admitting the forms of law to have been strictly pursued, because there was *lesion* in the contract, and that in such case the minor can claim the benefit of that remedy known to the Spanish, and yet existing in our jurisprudence called *restitutio in integrum.*—

East'n District.
*Jan.* 1824.

Agaisse & al.
*vs.*
Guedron & al

The existance of this vice in the sale now under consideration, is attempted to be shewn, fi.st, by refering the court to the grounds on which it was ordered as being false, and unjust and second to the circumstance that some years after the purchase, the property was disposed of, for a much higher price. Whether the facts alleged as the first ground, would have been sufficient by the antient law, to have enabled the court to declare the contract null, need not be enquired into. For we are clearly of opinion, that in cases arising under our Code, the causes which led to the sale cannot be taken into view in ascertaining whether there was lesion or not, since by a provision of that work, it is declared, that when the forms of law are pursued in the alienation of minors property, they are considered as to those acts as if they had executed them, being of full age. Persons of the latter description, when they attack a sale on that ground must shew that they have been aggrieved by the thing being sold for half its value. The only fact from which we could at all infer that such an enquiry was sustained here is that the property is proved to have been disposed of some time after the purchase for a much larger sum. But

the fluctuation in the price of property is too frequent and too great in this country, to draw with confidence such a conclusion from that fact alone, more particularly in a case such as this, where the price equals the value given by the appraisement. *See the case of Bossier & al. vs. Viene Curator & al.* 12 *Martin,* 421.

The remaining question is, whether the defendants have paid for this property. In their answer, as we have already seen, they set up a debt due by the plaintiff to widow Rousset the ancestor of one of them, and the person as heir to whom they are sued It has been objected to this claim, that it is not liquidated, and can not be pleaded in compensation to the demand on which the petitioner has brought his action. We agree with the appellee that it is not such a debt as produces the effects of compensation, but we think that notwithstanding it has not that effect, it may be offered by way of *reconvention.* We gave this subject a great deal of consideration, in the case of Evans vs. Gray, and are quite satisfied with the decision then pronounced. If the plaintiff sues for a sum of money when, at the same time, he is indebted to the defendant in an amount, which though not liquidated, is yet as large as that demanded:

East'n District.
*Jan.* 1824.

AGAISSE & AL.
*vs.*
GUEDRON & AL

in equity and justice he ought not to recover, and we are unacquainted with the rule of law which prevents us from giving effect to those principles, and doing that which is right between the parties.   The rule we have already recognised diminishes litigation; brings the contest between the disputants to a speedy termination: and lessens costs.   It may, it is true, in some instances delay the recovery of a just debt, but by adopting the other course we might enable the party who first sued to recover money which the defendant could never get back.   The authorities cited in the case, just refered to, support the opinion then expressed, we again refer to them, and we add that of Touillier, who treats the subject most elaborately and with the greatest clearness.— He observes that the modern legislation in France having passed in silence (as ours has done) the subject of *reconvention*,  the ancient law remains in full vigour, and although he contends very ably against carrying the doctrin so far as to permit the *reconvention* of a demand that has no connexion (non connexe) with that sued on, he admits the existence of the law which authorizes the defendant to oppose an unliquidated demand, approves of its

equity, and cites numerous authorities in its support. *Touillier droit civil francais, vol. 7, Liv. 3, Tit. 3, chap. 5, 421 a 497. 12 Martin, Evans vs. Gray.*

As the court below did not pass on this plea, and as the evidence sent up does not enable us to come to any satisfactory result on the merits the cause must be remanded for a new trial.

It is therefore ordered, adjudged, and decreed, that the judgment of the parish court be annulled, avoided, and reversed, & it is further ordered, adjudged, and decreed, that the case be remanded for a new trial, and that the appellee pay the costs of this appeal.

*Derbigny* for the plaintiff, *Livingston* for the defendant.